IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § | 1:25-MJ-00683-SH |
| JAMIL BAHLOULI | § § § | |

# OPINION

On June 25, 2025, Defendant Jamil Bahlouli was charged by criminal complaint with violating 8 U.S.C. § 1253(a)(1)(C). Dkt. 1. That statute states, in relevant part:

> Any alien against whom a final order of removal is outstanding . . . who –
>
> (C) connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such . . .
>
> shall be fined under title 18, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 1227(a) of this title), or both.

*Id.* Counsel for Defendant moved to dismiss the Complaint for lack of probable cause.

On July 3, 2025, the Court held a Preliminary Hearing pursuant to 18 U.S.C. § 3060 and Federal Rule of Criminal Procedure 5.1.[1] The Court issued an Order immediately after the hearing finding the evidence insufficient to establish probable cause to believe that the offense charged in the Criminal Complaint, Penalty for Failure to Depart in violation of 8 U.S.C. § 1253(a)(1)(C), had been committed. Dkt. 19. Accordingly, the Court ordered the Complaint dismissed and Defendant discharged pursuant to Rule 5.1(f), and now issues this written opinion.

---

[1] Counsel stipulated that the Farsi interpreter required for the hearing was qualified.

## I. Facts

The following facts derive from the evidence presented at the Preliminary Hearing and the Pretrial Services Report, of which the Court takes judicial notice.

Defendant is a 32-year-old citizen of Iran who was convicted of rape there and given a death penalty sentence. Defendant contends that he had a consensual affair with the wife of an officer in the Iranian National Guard and confessed under torture.

Defendant fled Iran and entered the United States illegally at the port of entry in San Diego, California on April 29, 2019. Dkt. 17-1 at 2. On October 19, 2020, after three merits hearings, an immigration judge denied Defendant's application for asylum and ordered that he be removed to Iran, but also granted his application for withholding of removal under the Convention Against Torture. *Id.* at 13. The immigration judge found that "the objective evidence [Defendant] submitted demonstrates that it is more likely than not that he would face harm that rises to the level of torture at the hands of the Iranian government if he were forced to return there." *Id*. The judge also explained that to grant withholding of removal under the Convention Against Torture, "the Court must order Respondent removed to the country where removal will be withheld or deferred." *Id.* at 13 n.5.

On October 14, 2021, Defendant self-deported to Canada, where the parties stipulated that he applied for asylum. Dkt. 17-5. He was arrested in Vermont on October 6, 2022 and withdrew to Canada after he was denied entry into the United States. *Id.* Defendant was arrested again in Montana on December 15, 2023, and charged with illegal reentry under 8 U.S.C. § 1326. *United States v. Bahlouli*, No. 4:23-mj-00134 (D. Mont.). He pled guilty to a misdemeanor charge of illegal entry into the United States under 8 U.S.C. § 1325(a)(1) and was ordered to serve a custodial sentence of time served, with no supervised release to follow, on January 5, 2024. *Id.* at Dkt. 22.

While Defendant was detained, the Department of Homeland Security issued a notice of intent to reinstate his prior order of removal on December 15, 2023, and a decision reinstating the order the next day. Dkt. 17-2. On January 4, 2024, Immigration and Customs Enforcement ("ICE") entered an order of supervision directing Defendant to report to the ICE agency office in San Antonio, Texas on January 23, 2023 [sic]. Dkt. 17-3. Defendant did not report. On February 28, 2024, he called ICE Enforcement Removal Operations ("ERO") in San Diego requesting the return of his identity documents and again was instructed to report to ICE in San Antonio, but did not. Dkt. 17-5.

Defendant moved to Austin, Texas in 2024 and married a Lawful Permanent Resident the same year. Dkt. 18-2. The couple paid an immigration attorney to file an application to renew Defendant's employment authorization. *Id.*

On June 22, 2025, the day after the United States bombed Iran, "ICE-ERO Austin received a list of Iranian nationals in [the] Austin area with final orders of removal and designated as National Security Threat, including Defendant (note: Defendant is not currently under that designation)." Dkt. 17-5. Three days later, ICE ERO and other law enforcement officers went to the apartment where Defendant lived with his wife to arrest him under the removal order. *Id.* His wife answered the door and spent some seventeen minutes talking with agents but denied them permission to enter. She first said that Defendant was not present, but later admitted that he was. Finally, the door was closed. Whether Defendant or his wife closed the door cannot be seen on the body-worn camera video of the encounter submitted by the Government (Ex. 5), but the lead officer testified that he believes it was Defendant who did so. Officers continued knocking on the door for nearly three hours and forty-five minutes. They also called Defendant repeatedly; he answered only once, said he was in California, then said he was going to California two days later, then hung up.

A Magistrate Judge issued the Complaint and a warrant for Defendant's arrest later the same day. In the Complaint, an ICE Deportation Officer alleges that Defendant's "2020 final order of removal was reinstated on or about December 15, 2023." Dkt. 1 at 1. The ICE Officer also alleges that on June 25,

> Deportation officers located and attempted to arrest the defendant in order to effect his removal pursuant to the outstanding final order of removal. Deportation officers went to BAHLOULI's residence, encountered him in the doorway of his residence, and attempted to arrest him. Defendant refused to be arrested and took an action designed to prevent or hamper his deportation and departure pursuant to the outstanding final order of removal by slamming the door on the deportation officers, remaining inside his residence, and refusing to exit his residence.

*Id*. On June 26, 2025, ICE officers returned to Defendant's apartment with the arrest warrant, breached the door, and arrested him.

## II. Legal Standards

### A. Preliminary Hearing

The purpose of a preliminary hearing is to ascertain "whether or not there is probable cause to warrant detention of the accused pending a grand jury hearing." *United States v. Coley*, 441 F.2d 1299, 1301 (5th Cir. 1971). Rule 5.1 provides:

> (e) . . . If the magistrate judge finds probable cause to believe an offense has been committed and the defendant committed it, the magistrate judge must promptly require the defendant to appear for further proceedings.
>
> (f) **Discharging the Defendant**. If the magistrate judge finds no probable cause to believe an offense has been committed or the defendant committed it, the magistrate judge must dismiss the complaint and discharge the defendant. A discharge does not preclude the government from later prosecuting the defendant for the same offense.

Probable cause "is the existence of reasonable grounds to believe the accused committed the charged offense." *United States v. Pack,* 255 F. Supp. 3d 695, 698 (S.D. Tex. 2017) (citation

omitted). "Stated another way, the government must present competent evidence sufficient to justify holding an accused to await trial, not evidence sufficient to justify a conviction." *U.S. v. Ramnath*, 533 F. Supp. 2d 662, 679 (E.D. Tex. 2008) (applying federal standard of probable cause in extradition case). The probable cause determination is made *de novo* relative to the arrest, based on the facts and circumstances as they exist at the time of the preliminary hearing. *United States v. Perez*, 17 F. Supp. 3d 586, 593 (S.D. Tex. 2014). The prosecution has the burden of offering sufficient evidence of probable cause, and all reasonable inferences are drawn in its favor. *Id.* at 593-94. The Government's probable cause evidence must support every element of the charged offense. *Ramnath*, 533 F. Supp. 2d at 679.

**B. 8 U.S.C. § 1253(a)(1)(C)**

To establish a violation of § 1253(a)(1)(C), the United States must prove beyond a reasonable doubt that: (1) a final order of removal was outstanding against Defendant; (2) Defendant was a deportable alien as defined by 8 U.S.C. § 1227(a); and (3) Defendant connived or conspired, or took any other action, designed to prevent or hamper or with the purpose of preventing or hampering his departure. *United States v. Talbot*, 22 F. Supp. 3d 419, 422 (M.D. Penn. 2014). The third element contains a specific intent mens rea requirement. *Id.* In other words, a defendant must act with purpose. *United States v. Bailey*, 444 U.S. 394, 405 (1980); *see also United States v. Buluc*, 930 F.3d 383, 393 (5th Cir. 2019) (stating that evidence establishing defendant's guilt included that he "candidly told the officers on the way to the airport that he did not intend to get on the flight" to his native Turkey); *United States v. Omran*, 641 F. App'x 427, 429 (5th Cir. 2016) (per curiam) (addressing defendant's intent to obstruct his departure).

### III. Analysis

The parties stipulated that Defendant was a deportable alien as defined by 8 U.S.C. § 1227(a), satisfying the second element of § 1253(a)(1)(C). Drawing all reasonable inferences in the prosecution's favor, the Court finds that the Government did not meet its burden to offer sufficient evidence of probable cause as to the first and third elements of the offense.

First, the Government must show probable cause that a final order of removal was outstanding against Defendant. Although the immigration judge ordered Defendant's removal to Iran on October 19, 2020, he also granted Defendant's application to withhold removal under the Convention Against Torture. Dkt. 17-1 at 13. The Government submitted the decision reinstating the order, Dkt. 17-2, but Defendant argues that neither reinstatement nor Defendant's self-removal to Canada terminated the order withholding removal, and no evidence was presented that the order withholding removal had been terminated under 8 C.F.R. § 208.24(f). Questions about the status of the order withholding removal to Iran raised during the Preliminary Hearing render the evidence insufficient to find probable cause as to the first element of § 1253(a)(1)(C).

To satisfy the third element, the Government must show probable cause that Defendant acted with the purpose of preventing or hampering his departure. Even if the Court found probable cause supporting the first element, it is lacking for the third.

Defendant makes a three-prong argument on the third element: (1) his proceedings had not reached the required "departure" stage, which he characterizes as the "tail end" of removal proceedings; (2) he took no action by merely refusing to leave his home when ICE had no authority to enter to effectuate its administrative warrant; and (3) the evidence is insufficient to show probable cause supporting the specific intent mens rea requirement that Defendant acted with the intent to prevent his departure.

First, Defendant argues that "departure" in § 1253(a)(1)(C) is distinct from "removal," and he had not reached the departure stage of his proceedings governed by the statute. Defendant contends: "Departure is not the same as removal but is the very end stage of the removal process when the deportee is about to exit the country." Dkt. 11 at 1. He cites several opinions affirming convictions for violating § 1253(a)(1)(C) by physically resisting boarding commercial flights for removal[2] or, in one instance, refusing to sign a transit visa application necessary for removal to Rwanda via South Africa.[3] In contrast, Defendant argues, his "removal order was not outstanding because it had been withheld by an Immigration Judge (IJ) under the Convention Against Torture and [his] departure was therefore contingent on future immigration proceedings and nowhere near imminent." *Id.* There is no evidence that ICE had started the administrative process of identifying a designated third country or obtained that country's approval to remove Defendant there.

Second, Defendant argues that "ICE had no authority to enter Mr. Bahlouli's home. His refusal to leave his house is not an action but an inaction that is beyond the scope of 8 U.S.C. § 1253(a)(1)(C)." Dkt. 11 at 3.

Key to Defendant's final argument as to mens rea is whether he knew the order withholding removal applied only to Iran and that he could be deported to a third country.[4] None of the paperwork in evidence at the Preliminary Hearing that Defendant received – including the Decision to Reinstate and the October 19, 2020 Decision and Order of the Immigration Judge –

---

[2] *E.g.*, *Buluc*, 930 F.3d at 385; *United States v. Waka*, 770 F. App'x 677 (5th Cir. 2019) (per curiam); *United States v. Ngay*, 708 F. App'x 192, 193 (5th Cir. 2018) (per curiam); *United States v. Diallo*, 569 F. App'x 221, 222 (5th Cir. 2014) (per curiam).

[3] *United States v. Nzamubereka*, 666 F. App'x 327, 328 (5th Cir. 2016).

[4] *See Johnson v. Guzman Chavez*, 594 U.S. 523, 531-32 (2021) ("If an alien is granted withholding-only relief, DHS may not remove the alien to the country designated in the removal order unless the order of withholding is terminated. But because withholding of removal is a form of country specific relief, nothing prevents DHS from removing the alien to a third country other than the country to which removal has been withheld or deferred.") (cleaned up).

ever mention removal to a third country. And Defendant's wife appeared surprised and confused when the officers outside her apartment told her that Defendant could be removed to an unnamed third country, asking: "What country?" and "Which country, sir?" To the latter question, the officer answered: "Just choose one, okay?" The lack of clarity as to whether a final order of removal was outstanding also calls into question whether Defendant could have acted with the specific intent to prevent or hamper his departure.

For the reasons argued by Defendant, the Court finds the record at Preliminary Hearing insufficient to show probable cause that Defendant took any action with the purpose of preventing or hampering his departure, the third element of a § 1253(a)(1)(C) violation.

## IV. Conclusion

Based on all facts and circumstances presented at the Preliminary Hearing, the evidence does not show a fair probability supporting the elements of Penalty for Failure to Depart under 8 U.S.C. § 1253(a)(1)(C). Finding no probable cause to believe that the offense charged has been committed, the Court dismissed the Complaint and discharged Defendant under Rule 5.1(f). Dkt. 19.

**SIGNED** on July 10, 2025.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE